STEWART CAPITAL CORPORATION,
Plaintiff,

v.

Cecil D. ANDRUS, Secretary of the Interior, Murphy Oil Corporation and Ocean Production Company, Defendants.

79 Civ. 1761(MP).

United States District Court,
S. D. New York.

April 18, 1979.

Whitman & Ransom, New York City, for plaintiff, by John M. Hadlock and David G. Taylor, New York City.

Davis, Polk & Wardwell, New York City, for defendants Ocean and Murphy, by Richard E. Nolan and James Flynn, New York City.

Robert B. Fiske, U. S. Atty., S. D. N. Y., New York City, for defendant Andrus, by Gary G. Cooper, Asst. U. S. Atty., New York City, and Charles Findlay, U. S. Dept. of Justice, Washington, D. C.

## DECISION AND OPINION

POLLACK, District Judge.

This is a suit for a declaratory judgment and an injunction against the Secretary of

Interior by the highest bidder for an offshore oil and gas lease which was awarded to the lower bidders because of a presumed defect of the higher bid submitted, in that an attestation by an Assistant-Secretary was allegedly required by the corporation's own resolutions (not by the Secretary of Interior) but not supplied with the plaintiff's bid.

The suit was heard at a bench trial and the action on the merits was advanced and consolidated with the hearing of the application for a preliminary injunction. Fed.R. Civ.P. 65.

This action arises under the laws of the United States and the jurisdiction of the Court is based on §§ 4(b) and 23(a)(1) and (3) of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1333(b) and 1349(a)(1) and (3); 28 U.S.C. § 1331; and § 10 of the Administrative Procedure Act, 5 U.S.C. § 702. The amount in controversy exceeds $10,000 exclusive of interest and costs.

The plaintiff, Stewart Capital Corporation, is a Delaware corporation with its principal place of business in New York. The defendant, Cecil Andrus, is the Secretary of the Interior of the United States. The defendant, Murphy Oil Corporation, is a Delaware corporation with a principal place of business in Arkansas and the defendant, Ocean Production Company, is a Delaware corporation with its principal place of business in New Orleans, Louisiana.

On January 29, 1979, the Department of the Interior published in the Federal Register a notice of sale of oil and gas leases on the Outer Continental Shelf off New Jersey, pursuant to § 8 of the Outer Continental Shelf Lands Act and the regulations issued thereunder. 43 C.F.R. part 3300; 44 Fed.Reg. 5716–28 (1979) (the "Notice of Sale").

The Notice provided *inter alia* that a tract of submerged land numbered 49–125 in the so-called "Baltimore Canyon" area off New Jersey would be among the Tracts offered for competitive bidding and that sealed bids would be received thereon until 9:30 A.M. on February 28, 1979, in the office of the Manager, New York Outer Continental Shelf Office, Bureau of Land Management ("BLM" hereafter). The bids were to be opened at 10:00 A.M. on that day.

The Notice required all bids to be submitted in accordance with applicable regulations. It prescribed the form of bid, which form included a specific requirement of signature by the bidder on each bid. Bidders were required to submit with each bid one-fifth of the amount of the bid, either in cash or by check payable to the order of the BLM.

Plaintiff submitted a bid on Tract 49–125 in the amount of $213,000 and enclosed a certified check of the corporation signed by its Assistant-Secretary, Irene Rose Robinson, for $42,600 in accordance with the Notice of Sale. The bid was signed by the plaintiff's president. The defendants Murphy and Ocean also submitted a joint bid on Tract 49–125 in the amount of $212,000.

The bids were opened and read on February 28, 1979. The check signed by the Assistant-Secretary submitted with the bid signed by the president of the plaintiff in the amount of $42,600 was deposited for collection in a bank with the endorsement of the BLM for credit to the Treasurer of the United States.

On March 29, 1979, the defendant Andrus announced a decision to award the lease on Tract 49–125 to defendants Murphy and Ocean and plaintiff was notified by the Secretary of the Interior that its bid contained a technical deficiency, namely that the signature of the plaintiff's president on its bid was not attested by its Assistant-Secretary. Because of this supposed defect the defendant Andrus characterized the bid as "deficient" and "legally unacceptable" in reliance on an analysis submitted to him by the Solicitor of the Department dated March 19, 1979, and despite the fact that the bid form set out in the Notice of Sale makes no provision for attestation or other form of authentication of the signature to the bid. The plaintiff requested reconsideration of the decision to reject its bid, which

was denied. Pursuant to the Andrus decision, the defendants have executed a lease on Tract 49–125.

This suit was filed on April 4, 1979, charging that the decision of the defendant Andrus to award the lease to defendants Murphy and Ocean was arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory jurisdiction of authority and without observance of procedure required by law. The plaintiff sought a temporary restraining order enjoining the issuance of and any proceedings under the lease to the defendants Murphy and Ocean and such an order was entered on consent of all parties and the case was set for prompt trial of the application for a preliminary injunction.

The relief requested in this suit is a declaratory judgment that the defendant Andrus unlawfully awarded the lease on Tract 49–125 to the defendants Murphy and Ocean, a permanent injunction against the defendants from performing such a lease, a declaration that plaintiff is entitled to the lease on Tract 49–125, and a mandatory injunction requiring the Secretary to issue a lease on Tract 49–125 to the plaintiff.

43 C.F.R. § 3302.4 entitled "What must accompany bids", identifies the items a corporate entity such as plaintiff must submit to qualify as a bidder:

(1) A separate bid for each lease unit;

(2) a certified or cashier's check or bank draft on a solvent bank, or money order or cash for the amount required pursuant to the regulations and Notice of Sale;

(3) a certified copy of the bidder's articles of incorporation;

(4) a copy either of the minutes of the Board of Directors' meeting or of the by-laws indicating the person signing the bid has the authority to do so, or, in lieu of the foregoing, a certificate of the bidder's corporate secretary or assistant secretary to that effect, over the corporate seal, or appropriate reference to the Bureau of Land Management records in which such documents previously have been submitted; and

(5) a sworn statement by each joint bidder stating that the bid is not disqualified under 43 C.F.R. § 3302.3–4(c).

Plaintiff's bid submission consisted of the following documents:

(1) The bid form, executed by plaintiff's president, Mr. Alexander S. Bowers;

(2) a certified check in the requisite amount signed by the Assistant-Secretary;

(3) a certified copy of plaintiff's articles of incorporation;

(4) a notarized certificate of the Assistant-Secretary of plaintiff as to resolutions of the plaintiff's Board of Directors; and

(5) a letter from plaintiff to the BLM advising of a sharing agreement between plaintiff and certain third parties.

The plaintiff's documents completely satisfied the requirements of 43 C.F.R. § 3302.-4. However, the BLM's memorandum to the defendant Andrus concluded plaintiff's bid was "deficient" and "legally unacceptable." That conclusion was rested on an analysis set out in the memorandum addressed to the Secretary from the Solicitor of the Department dated March 19, 1979. The Solicitor's memorandum relied on *Superior Oil Co. v. Udall,* 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969) where the bid was submitted unsigned, a circumstance very different from that present here. The bid form set out in the Notice of Sale makes no provision for attestation or any other form of authentication of the signature to the bid.

The plaintiff's Assistant-Secretary submitted several certificates to the documents which accompanied the bid as well as the certified check which she signed for the required deposit to be made by the corporation. She certified that the following resolutions as well as the facts expressed therein were duly adopted at a meeting of the Board of Directors of the plaintiff held on February 27, 1979:

RESOLVED, that Alexander Stewart Bowers, the President of the Company be and hereby is authorized and directed to execute all documents required for bidding for federal leases at Mid-Atlantic Outer Continental Shelf Oil and Gas Lease Sale No. 49,* and further

RESOLVED, that Irene Rose Robinson, the Asst. Secretary of the Company is hereby authorized and directed to execute and attest to all such documents and to execute a certificate attesting to the fact that the resolutions have been duly adopted and are in full force and effect.

The Assistant-Secretary further furnished certificates that she was the duly elected assistant-secretary of the plaintiff and attached true copies of the charter of the plaintiff, as amended, which among other matters named Alexander S. Bowers as the president of the corporation. Also annexed was a certificate indicating equal opportunity compliance in which Stewart Capital Corporation was certified by the Assistant-Secretary to be the "Bidder".

The evidence at the trial established that there are no requirements of the Department of Interior as to who should sign bids; that each bidder establishes its own formalities in expressing the bid; that the Department of Interior does not require an attestation to the bid or to the signature thereon.

■ The omission of a formal attestation by the Assistant-Secretary to the bid form does not detract from the legal validity and binding effect of the bid. Defendants' assertion that plaintiff's bid is "deficient" and "invalid" is premised on the erroneous legal proposition that attestation is a substantive requisite to the bid's binding effect. In reality, absent explicit statutory provision to the contrary, attestation is a mere formality of bearing witness to, or affirming the genuineness of, the execution of a document. *See, e. g., Financeamerica Private Brands, Inc. v. Harvey Hall, Inc.,* 366 A.2d 836, 837–8 (Del.Super.Ct.1976);

*Tenney Telephone Co. v. U. S.,* 82 F.2d 788, 790 (7th Cir. 1936).

In 7 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 3056 (perm. ed. 1978), the author states:

[A]n acknowledgment is necessary merely . . . to authorize [the] introduction [of corporate instruments] in evidence without other proof of execution; and if the acknowledgment is insufficient on its face, . . . the instrument is not entitled to be introduced in evidence without proof of its execution.

Acknowledgment is not necessary to make the instrument valid as between the parties, unless the statute so provides; and it follows that a defective acknowledgment does not invalidate the instrument in the absence of a statute to the contrary.

In 7 C.J.S. "Attestation" is defined as meaning an act by which one certifies the truth of a fact; an act of authentication; a signature; . . . the act of witnessing the signature of an instrument . .; the authentication of an instrument by the requisite number of witnesses. (*Id.* at 692–93).

■ The effect of attestation upon the authority of a corporate officer to make an offer which binds the corporation depends upon state law, and as plaintiff is incorporated in Delaware, the law of that state is controlling in this controversy.

■ The Delaware General Corporation Law does not, in any instance, require attestation of a business document as a requisite to the validity of that document as a corporate act. It specifies attestation as one means of affirming the authenticity of a document only in the case of organic corporate instruments, which are required to be filed with the Secretary of State. Del.Code tit. 8, § 103(a)(2)a.

In this case, no statute or regulation requires attestation and it is conceded that

---

* N.B. The facts contained therein were attested as such by the Assistant-Secretary by her signature: "IN WITNESS WHEREOF, I have exe- cuted the foregoing certificate this 27th day of February, 1979" "Irene Rose Robinson, Assistant-Secretary."

counter-signature of plaintiff's bid was not contemplated by Interior Department regulations. The presence or absence of attestation has no effect whatsoever on the validity of plaintiff's bid as a binding offer.

It developed at the hearings that Mr. Lawrence Hoese, an Interior Department attorney and the representative of the Department who furnished the opinion on which the Secretary ultimately rejected the plaintiff's bid had overlooked and did not know that the Assistant-Secretary was the one who had actually signed the necessary deposit check which accompanied the bid signed by the president. Mr. Hoese had examined the papers on the bid for the Department, but conceded that he had not seen the check that accompanied the bid signed by the president and did not notice that it had actually been signed by the Assistant-Secretary for the full amount of the deposit required for the bid. He was asked whether if he had seen the check and noticed that the Assistant-Secretary had signed it he might have believed that everything that the Assistant-Secretary had to do to acknowledge the president's authority was expressed inferentially in the signed check that accompanied the president's bid to the Secretary. He replied that he would, at least, have incorporated it into his research on the attestation question but that not having seen it he did not research the point. He further conceded that there was a vast difference between an unsigned bid and one that was not accompanied by an acknowledgment of the bidder's secretary that the president had authority to submit it. He further admitted that where there was something to indicate that corporate liability was intended, like a check for the amount of a deposit, a seemingly defectively executed contract or offer of a corporation could be deemed to be binding. However, on cross-examination by counsel for the defendant Murphy the same witness took the position that had he known about the check at the time, his opinion would still be that the bid was defective and invalid.

■ On the basis of the record herein it appears to the Court that the determination of the Department of Interior that plaintiff's bid was legally deficient and invalid was erroneous in fact and in law. The alleged omission of the formal type specific attestation in the circumstances of this case did not make the bid insufficient or unsigned. Even assuming that plaintiff's corporate resolution required something more than plaintiff's signature, the certified check and certified resolution reciting the substantive facts contained therein signed by the plaintiff's Assistant-Secretary and delivered as part of the bid package were sufficient "attestation".

■ Tract 49–125 is a valuable virgin tract of land. If the defendants are allowed to proceed under said lease, Murphy and Ocean would be able to commence drilling on the tract and would be able to destroy the value of the leasehold by removing any oil and gas contained therein.

The Court concludes that the signature of plaintiff's president on the bid form was in all respects genuine; that plaintiff's bid was legally binding on the plaintiff if accepted by the defendant Andrus; that the omission of a further formal attestation did not make the bid insufficient or unsigned; and that the submission by the Assistant-Secretary of the certified documents and certified check with the bid package, all signed by her, was sufficient attestation if any were needed. The check sufficiently witnessed and authenticated the bid and ratified it as the authorized act of the corporation.

The plaintiff is the "highest responsible qualified bidder" on the tract in question and under the regulations is the "successful bidder." The action rejecting the bid of the plaintiff was legally unsupportable and thus arbitrary and capricious even if not grounded on bad faith. The Secretary is obligated to accept the highest valid bid if any bid is accepted.

The lease to the defendants Murphy and Ocean executed by the Secretary on or about April 4, 1979 is null and void, not having been issued in compliance with the legal bidding procedures, and the parties defendant hereto should be enjoined from

asserting any rights or taking any actions thereunder. The plaintiff is entitled to receive the oil and gas lease on Tract 49–125 and the Secretary is directed to execute such a lease forthwith.

Judgment should be entered accordingly.

The foregoing constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

SO ORDERED.